BOOTH, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(Decided May 15, 1939.)

*Mr. Christian E. Rhonemus* and *Messrs. Critchfield, Critchfield & Critchfield,* for appellee.

*Mr. Thomas J. Herbert,* attorney general, and *Mr. E. P. Felker,* for appellant.

DOYLE, J. This case was instituted by Margaret Booth, wife of John W. Booth, deceased, by an application to the Industrial Commission of Ohio for compensation for the death of her husband upon the ground that he suffered an accidental injury in the course of and arising out of his employment at the Ohio Box Board Company of Rittman, Ohio. The Industrial Commission denied the claim. Appeal was instituted under the statute to the Court of Common Pleas of Wayne county. Upon trial in that court, a judgment was entered for the claimant, following a jury verdict allowing participation in the fund. From this judgment the cause has been appealed to this court on questions of law.

There is evidence in the record that the deceased was regularly employed at the Ohio Box Board Company, and that his duties consisted of tending a "beater," which is a machine used to chop and beat paper into a pulp, which after mixture with various ingredients is pressed into box board. The beater is a covered, cast iron tank, in the center of which is a roll to which knives are attached. The roll is affixed to a shaft, which is driven from a central power plant. The process of making pulp consists of beating and cutting the paper and other ingredients in a solution of water. The mixture is cut, chopped and beaten in a temperature of 120° F. by means of the injection into it of live steam.

It is the usual and ordinary duty of a beater attendant to keep the "stock" near the knives and shaft, and he performs this duty by means of a stick and hook. It is also a usual thing for the pulp to collect around the roll, and "then a man gets up with a pole and sort of clears away around the roll so it won't stick and spoil the paper when it finally comes out of the beater."

(Defendant's witness Cummins.) This operation is accomplished by one man in a period of from six to ten minutes. The work is performed in an atmospheric temperature much higher than that of the average temperature of the room, because of the emission of the hot vapor from the machine, and the necessity of the workman to perform his work at the opening into the heated material.

There is further evidence tending to prove that the claimant on the day of his alleged "injury," while attending a beater, worked for a period of 20 minutes in dislodging material which had become "plugged back of the shaft"; that after working for this length of time in the heat he suffered from "heat exhaustion"; that he became immediately ill, and, after being given coffee by a fellow employee, went to his home; and that after a period of several days, during which he remained at his home, he resumed his work for a period of several months, after which he became incapacitated for further work. There is further evidence tending to prove that this attack of heat exhaustion progressively developed into various complications, from which he died several years later.

Witnesses for the claimant testified that it was unusual for a beater to become "clogged in back of the shaft"; and that, in dislodging the material at the time of the alleged injury, the deceased was assisted by a fellow employee. The witness Cummins, hereinbefore referred to, who was general foreman of the mill room, and who, as hereinbefore stated, was called as a witness for the commission, further testified as follows:

"Q. Mr. Cummins, when this paper pulp collects around the roll, as I understand it, then a man gets up with a pole and sort of clears away around the roll so it won't stick and spoil the paper when it finally comes out of the beater? A. Yes.

"Q. You say it took six or eight and sometimes ten

minutes but you never saw many times that it took ten minutes? A. No, I didn't.

"Q. How many men does it take to do that job on one beater? A. Well, only one man at a time can work up there.

"Q. Suppose the beater—it was plugged so badly back of the shaft that it took two men with poles and hooks from fifteen to twenty minutes to clear it, that would be unusual, wouldn't it? A. Yes.

"Q. That would be a very rare thing, if ever? A. Yes."

The evidence warranted the conclusion by the jury that the deceased, in pursuing his usual duties, was confronted with an unusual and unexpected happening, which made it necessary for him, in the performance of his work, to become subjected to an extraordinary and unusual strain from physical exertion and heat for a period of time much longer than was usual in the normal operation of the machine. The events of employment preceding the heat exhaustion differentiate this case from those in which recovery is sought for claimed accidental injury resulting from occurrence growing out of normal business hazards.

I quote with approval from *Ford Motor Co.* v. *Hunter,* 50 Ohio App., 547, 199 N. E., 85:

"Heat exhaustion, having a causal relation to an unusual and unexpected happening in the course of employment requiring unusual physical exertion, is an injury within the meaning of the Workmen's Compensation Act, and compensable."

The Industrial Commission, in addition to claiming that "The verdict is contrary to law, contrary to the evidence, and against the manifest weight of the evidence," also claims that "the [trial] court had no jurisdiction over the subject-matter of the cause of action."

The following facts from the evidence are set out chronologically:

August 3, 1933—date of alleged accident.

November 13, 1933—date of last employment with the company.

October 1, 1935—date of death of employee.

April 2, 1936—date of the first notice of death and preliminary application.

It is asserted by counsel for the commission that ''the record is * * * clear that there was no continuous disability from the time of the injury to the time of death. The record shows that the deceased worked for a period of three months and ten days after the date of the alleged injury, except for a period of three days during which he was reported to be disabled on account of rheumatism,'' and that therefore, in view of Section 1465-82, General Code, the trial court had no jurisdiction over the subject-matter of the cause of action.

Section 1465-82, General Code, provides:

''In case the injury causes death within the period of two years, and in cases in which compensation or disability on account of the injury has been continuous to the time of the death of the injured person and the death is the result of such original injury, the benefits shall be in the amount and to the persons following * * * *.''

This statute requires as a condition precedent to recovery either:

1. That death occurred within two years after the accident, or

2. That compensation was paid continuously from the date of the injury to the date of death, or

3. That disability resulting from the injury was continuous from the date of the injury to the date of death.

These conditions are made an essence of the right created and are an inherent part of the statute out of which the right of action arises. There is no right of

action independent of the conditions, and nonconformance to them extinguishes the right altogether.

In the instant case we are concerned with condition number three only, for the reason that the death occurred more than two years subsequent to the injury, and no compensation was ever paid claimant's decedent. Whether disability on account of the injury was continuous to the time of the death is a controlling issue in the case, and its determination by the jury in the affirmative is essential to recovery.

It is claimed by the commission that the fact that the employee returned to work several days following his injury and worked for several months, proves as a matter of law an interruption in his disability.

With that contention we do not agree. The record in this case discloses evidence from which reasonable minds could reach different conclusions upon the issue. Many employees work while suffering from disability. In many cases necessity compels it. The fact that the deceased did work, however, may be taken into consideration by a jury for the purpose of determining whether he suffered a continuous disability.

The trial judge in his general charge to the jury (no special instructions were given or requested before the argument of counsel) briefly stated the issues as made by the pleadings. He also read from the petition the following: ''Plaintiff further says that said heat exhaustion resulted in the death of said John W. Booth on the first day of October, 1935; and that the disability of said John W. Booth was continuous from the time of said injury to the time of his death.''

The court then instructed the jury that they were called upon to determine only two issues. They were: 1. Did the plaintiff's decedent on August 3, 1933, while in the employ of the Ohio Box Board Company, suffer an accidental injury, to wit, heat exhaustion? and 2. If so, was such accidental injury the direct and proximate cause of the death of plaintiff's decedent on

October 1, 1935? No mention was made of the vital issue of "continuous disability," and it was not submitted to the jury as an issue in the case, although it had been properly plead in the petition.

The court instructed the jury that the plaintiff could recover if she proved by a preponderance of the evidence "that the death of the plaintiff's decedent * * * was a direct and proximate result of the accidental injury which plaintiff claims that her decedent * * * received on the 3rd day of August, 1933, while in the employ and in the course of his employment with the Ohio Box Board Company, * * * and from which injury he died on October 1, 1935. And if the plaintiff so proves to you by a preponderance of the evidence, then in that event your verdict would be for the plaintiff," etc.

Subsequently in the charge the court again said: "So that, as I have instructed you, it is the duty of the plaintiff to prove to you by a preponderance of the evidence * * * that such an accidental injury had happened to plaintiff's decedent on August 3, 1933, and that said accidental injury was a direct and proximate cause of plaintiff's decedent's death on October 1, 1935. If she has proven that, then she would be entitled to a verdict at your hands. If she has failed to so prove, then she would not be entitled to a verdict and your verdict would be for the defendant."

At the conclusion of the court's charge, no request was made to have the court charge the "continuous disability" issue. A general exception only was taken. Does this state of the record require this court to find that prejudicial error exists?

It is the duty of the trial court to instruct the jury upon the essential elements of the case without request by counsel. Where this duty has been met, error cannot be assigned for a failure to give other instructions that are not asked. Many Ohio cases stress the duty of counsel to aid the court by specifically calling atten-

tion to omitted matters. However, other cases do not put the entire responsibility upon counsel, but insist that the court has a responsibility to submit to the jury all of the controlling issues made by the pleadings.

. The failure of the trial court in this case to submit to the jury all of the essential issues incumbent upon the plaintiff to prove as a condition precedent to recovery constitutes an error of law. *B. & O. Rd. Co.* v. *Lockwood,* 72 Ohio St., 586, 74 N. E., 1071; *Simko* v. *Miller,* 133 Ohio St., 345, 13 N. E. (2d), 914.

Furthermore, the specific instruction that plaintiff was entitled to recover if she proved only two of the issues necessary to recovery was a positive error of commission, and both of said errors were material and prejudicial to the rights of the defendant.

*Judgment reversed and cause remanded.*

WASHBURN, P. J., and STEVENS, J., concur.